J-S18044-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| EAST END GUN CLUB OF SCHUYLKILL HAVEN, PA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANNE C. KOWALCZYK, SUSAN C. STRANG, CYRUS PALMER DOLBIN, ELLEN MARIE DOLBIN | : | No. 1624 MDA 2021 |
| | : | |
| Appellants | : | |

Appeal from the Judgment Entered March 9, 2022
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s):  S-2019-2015

BEFORE:  BENDER, P.J.E., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:          **FILED: AUGUST 7, 2023**

Anne C. Kowalczyk, Susan C. Strang, Cyrus Palmer Dolbin, and Ellen Marie Dolbin (Appellants) appeal from the order entered in the Court of Common Pleas of Schuylkill County, which granted quiet title to Appellee, East End Gun Club of Schuylkill Haven, Pennsylvania (East End) of a 150-acre property in Wayne Township, Pennsylvania, as made final by the entry of judgment on March 9, 2022.  Appellants raise a myriad of claims on appeal, including, *inter alia*, trial court error in (1) failing to properly review the record; (2) failing to apply the principle of acquiescence; (3) accepting the testimony of a defense expert witness; and (4) improperly shifting the burden of proof to them.  Based on the following, we affirm.

At the outset, the crux of this appeal concerns a dispute over a 50-acre tract of land (the Property) that is part of the East End Property, and has been contested since 2009.[1]  As will be discussed in detail below, Appellants claim ownership of the Property pursuant to a November 13, 2014, deed (the Kowalczyk-Strang-Dolbin Deed) from Cyrus Palmer Dolbin[2] to them.  East End also asserts ownership of the Property by a deed dated February 11, 1963 (the 1963 Deed), from Anthony Wallace, Leon W. Naus, George D. Naus, and Maurice E. Umbenhaur, Trustees of and for the East End Gun Club (the Trustees of East End) to East End.  **See East End Gun Club**, 1458 MDA 2019 (unpub. memo. at 1-2).  The 1963 Deed described the total property as containing 150 acres and represented the acreage conveyed to the Trustees of East End from Charles V. and Susan E. Strause, husband and wife, by deed dated August 7, 1930 (the Strause Deed).  **Id.** at 2.  "However, the Strause [D]eed described the property as containing 100 acres of land, 'more or less.'"  **See** Trial Ct. Op., 1/31/22, at 1.  It is those last three words — "more or less"

---

[1] Indeed, this Court has addressed appeals concerning this land in some fashion three times before.  **See McGovern v. East End Gun Club of Schuylkill County, PA**, 1954 MDA 2013 (unpub. memo.) (Pa. Super. Sept. 25, 2014); **Kowalczyk v. East End Gun Club of Schuylkill County, PA**, 1303 MDA 2016 (unpub. memo.) (Pa. Super. Jan. 30, 2018); **East End Gun Club of Schuylkill County, PA v. Kowalczyk**, 1458 MDA 2019 (unpub. memo.) (Pa. Super. Oct. 5, 2020).

[2] Cyrus Palmer Dolbin is a judge of the Court of Common Pleas of Schuylkill County, which resulted in a full-bench recusal of that court.  **See** Trial Ct. Op., 1/31/22, at 2 n.1.

— that Appellants take issue with as they assert that the Strause Deed only provided East End with 100 acres, not 150 acres.

A prior panel of this Court summarized some of the relevant facts and procedural history of this case as follows:

> In September 1950, the Honorable (then attorney) Donald Dolbin of the Schuylkill County Court of Common Pleas purchased a parcel of land from the Schuylkill County Tax Claim Bureau at an upset sale. The deed [(the 1950 Tax Claim Bureau Deed)] reflects the property was owned by Alvin Heim and sold for $90.00. Dolbin placed the title to the property in the names of Anne Palmer Dolbin and Jane Palmer Craig, his wife and sister (hereinafter "Sellers"). The property is landlocked and unimproved.
>
> Dolbin paid real estate taxes on the property until his death in 2000. Thereafter, Dolbin's son, the Honorable Cyrus Palmer Dolbin, as one of the co-executors, paid the real estate taxes until 2008, when Sellers entered into an agreement of sale with [James P. and Shana L. McGovern, husband and wife (the McGoverns)]. In 2010, the McGoverns divorced. Since then, James McGovern has paid the taxes.
>
> Pursuant to the terms of the agreement of sale, the McGoverns were responsible for securing a registered survey of the tract, securing an abstractor in order to establish the chain of title, and proceeding with the action to quiet title. The McGoverns acknowledged that the agreement of sale called for the sale of 75.8 acres, indicated in the tax assessment records, in contrast to the 83-acre tract found in the [1950 Tax Claim Bureau Deed] to Dolbin. The McGoverns further acknowledged that the registered surveyor determined the tract was actually approximately 67 acres.
>
> After signing the agreement of sale, the McGoverns walked around the boundaries of the property and observed warning signs posted by [East End]. Walter J. Manhart, the registered surveyor, secured all the adjacent deeds, assessment maps, zoning maps and surveys he could find. Using these instruments, Manhart developed a legal description[1] of the property in question; he determined that the tract consisted of 67.904 acres. Additionally,

- 3 -

he determined that in 1963, while East End was conducting a survey of its land, it surveyed into its deed a 50-acre parcel of the Dolbin tract.

_____

[1] A legal description is a formal description of real property, including a description of any part subject to an easement or reservation, complete enough that a particular piece of land can be located and identified. The description can be made by reference to a government survey, metes and bounds, or lot numbers of a recorded plat. Black's Law Dictionary 746 (8th ed. 2005).

_____

*McGovern*, 1954 MDA 2013 (unpub. memo. at 1-3) (record citation omitted).[3]

On January 23, 2009, the McGoverns filed a complaint against East End in quiet title and ejectment.[4] "The McGoverns also alleged that they held title by virtue of the deeds set forth in their chain of title, including the 1950 Tax Claim Bureau Deed, and that [East End] had no basis to claim title because the disputed land is not included in any deed by East End." *McGovern*, 1954 MDA 2013 (unpub. memo. at 3).

In its answer, East End admitted that it acquired title by way of the recorded 1963 Deed. *See McGovern*, 1954 MDA 2013 (unpub. memo. at 3).

_____

[3] We will refer to this matter as "the 2014 *McGovern* decision."

[4] The matter was docketed at No. S-172-2009.

"In that deed, the Trustees of East End conveyed to themselves 50 more acres of land than was contained in the prior deed for the same land." *Id.*

The matter proceeded to a hearing in 2013, where the McGoverns' expert, Manhart, testified "that at no time did he specifically identify the 83 acres referenced in the tax claim deed." *See McGovern*, 1954 MDA 2013 (unpub. memo. at 4).

> Devon Henne, the expert testifying for East End, did not perform a field survey but, instead, examined the legal description of the property in order to identify the properties involved and to try to come up with some kind of definition of the property. It became apparent to Henne that the instant dispute was more of a title dispute than a boundary dispute. Henne determined that the disputed area, which was described in the Manhart survey, was patented to James Everhart on November 19, 1841. Henne asserted that the lack of an ability to trace title forward to East End and the Dolbins creates, from Everhart, a cloud on the title for both parties in the disputed area.

*See McGovern*, 1954 MDA 2013 (unpub. memo. at 4).

On September 11, 2013, the trial court[5] denied relief, stating:

> The [c]ourt is confronted with a claim and procedural history seeking to [q]uiet [t]itle that appears substantially flawed at the outset. . . . [W]e cannot find that [the McGoverns] sustained [their] burden of proof as to the disputed 50 plus acres . . . [and] we are not further persuaded that . . . East End has staked a superior claim to the disputed 50 acre parcel warranting a decree in its favor.

Opinion, 9/11/13, at 18. Moreover, the court concluded "that the prayed for relief is denied and the *status quo* remain. Both parties should work toward

_____

[5] Senior Judge John C. Uhler was presiding at the time.

amicably untangling these complex title and boundary issues in a fashion designed to facilitate future land transfers." *Id.* at 19.

The McGoverns appealed, and a panel of this Court affirmed. *See McGovern*, 1954 MDA 2013 (unpub. memo. at 1). The panel recognized that while tax claim deeds "can be evidence of ownership and title, it does not necessarily follow that all tax deeds qualify as *prima facie* evidence of good title." *Id.* at 7. Furthermore, the panel stated:

> Here, the tax deed initially received by the Dolbins and then subsequently passed on to the McGoverns merely contains a description of the acreage of the property, a description of the condition of the land, and the township in which the property is located. The deed does not contain any other type of legal description that would allow for a survey to accurately define where the boundaries of the property exactly lie.

*Id.* Lastly, the panel determined:

> The plaintiffs' burden in an action in ejectment at law is clear: they must establish the right to immediate exclusive possession. Recovery can be had only on the strength of their own title, not the weakness of defendant's title. The crux of an ejectment action, therefore, rests with the plaintiffs' ability to identify, by a preponderance of the evidence, the boundaries of a parcel of land to which they are out of possession but for which they maintain paramount title.
>
> The McGoverns' surveyor, Manhart, conceded during cross-examination that he had not specifically identified the 83 acres referenced in the tax claim deed. In this regard, plaintiff has the burden of presenting definite and certain evidence of the boundary of the property in controversy. Where the plaintiff is unable to establish his boundary line by adequate legal proof, his action must fail and he is not entitled to relief.
>
> The McGoverns, and to some extent Henne, the expert hired by East End, have cast doubt on the strength of the title held by East End. In their brief, the McGoverns relied on the perceived

relative weakness of, and cloud on, East End's title to argue that the court should quiet title in their favor. However, unless and until the McGoverns have made a *prima facie* case by showing title sufficient upon which to base a right of recovery, the burden does not shift, and East End is not required to offer evidence of its title. If the McGoverns fail to establish proof of title with the required clarity, they cannot recover, no matter how defective East End's title may be.

For the reasons stated above, we are unable to conclude that the trial court erred. The trial court properly found that the McGoverns failed to meet the evidentiary standard that would allow the burden of proving superior title to shift to East End Gun Club. Because the McGoverns failed to make a prima facie showing of good title, the trial court was in no position to weigh the relative strength of the parties' claims to the disputed area. Therefore, the remaining claims of error made by the McGoverns do not warrant further consideration.

**McGovern**, 1954 MDA 2013 (unpub. memo. at 8-9) (citations omitted).

Less than two months later, the Dolbins executed the Kowalczyk-Strang-Dolbin Deed to Appellants. "The legal description was the same one they used in the prior action, which [this] Court had found wanting." Trial Ct. Op., 1/31/22 at 4.

On March 11, 2015, Appellants filed with the Court of Common Pleas of Schuylkill County a quiet title and ejectment action in which they claimed superior title to East End over the Property. **See East End Gun Club**, 1458 MDA 2019 (unpub. memo. at 4). "Several months later, East End received a Change in Assessment Notice from the Schuylkill County Tax Assessment Office informing it of a reduction in its assessment given the reduction in the acreage of East End's property. East End deduced that Appellant[s'] quiet title and ejectment action triggered the assessment reduction, prompting East End

- 7 -

to contest the Board's decision." **Id.** The Board rejected East End's challenge and East End filed an assessment appeal to the court of common pleas on October 7, 2015. **See id.** at 4-5.

On November 5, 2015, East End also commenced the present action, seeking to quiet title its 150 acres, that included the Property. Appellants filed an answer with new matter and counterclaim, alleging East End's ownership interest derived solely from the Strause Deed, which conveyed to the Trustees 100 acres "more or less." **East End Gun Club**, 1458 MDA 2019 (unpub. memo. at 5). "East End filed its Reply admitting that the Strause [D]eed is within the chain of title but denying the implication that it owns less than the land it has occupied since 1930." **Id.** Several days later, the trial court granted a petition filed by East End to intervene and added East End as a defendant to Appellants' quiet title action. **See id.** The court subsequently consolidated Appellants' quiet title action, East End's quiet title action, and East End's assessment appeal. **See id.**

On December 7, 2015, Appellants filed preliminary objections, arguing: (1) the 1963 deed, that was attached to East End's complaint, incorporated by reference the Strause Deed that conveyed only 100 acres of land "more or less[;]" and (2) the language "more or less" could not include the additional 50 acres. **Kowalczyk**, 1303 MDA 2016 (unpub. memo. at 2). The trial court denied Appellants' preliminary objections, and they were granted permission to appeal. A panel of this Court affirmed the trial court's denial on the basis

that the Strause Deed was not attached to East End's complaint, or even Appellants' preliminary objections, and therefore constituted a speaking demurrer. *Id.* at 4.

Thereafter, Appellants filed a motion for judgment on the pleadings in May of 2018. In the motion, they argued that "East End could not, by a conveyance to itself, acquire title to 150 acres of land when the previous deed conveyed only 100 acres, more or less." *East End Gun Club*, 1458 MDA 2019 (unpub. memo. at 5). East End filed its own motion for judgment on the pleadings, arguing that Appellants' claims were barred under the doctrines of collateral estoppel and *res judicata*. *See id.* at 6. Appellants did not file a response. *See id.* On July 30, 2019, the trial court treated East End's motion as uncontested and granted it, while also quieting its title to the Property, granting its assessment appeal, and dismissing Appellants' counterclaim and its separate action to quiet title. *See id.* Appellants appealed, and a panel of this Court vacated the trial court's order on the basis that the court erred by finding that East End's motion was uncontested where Appellant had filed its own, earlier, motion for judgment on the pleadings. *Id.* at 11-12. Moreover, the panel determined: (1) East End's right to succeed on its claim was "not certain at the time" the court entered its order nor was Appellants' position "so lacking as to allow a court to deem East End's complaint admitted and to grant East End's motion without findings as to the facts therein alleged[;]" (2) the record did "not reflect a judicial determination by the trial court that East

End established quiet title through its pleadings and exhibits[;]" and (3) the principle of *res judicata* did not apply because the prior decision did not make a determination "on whether East End had superior title to the McGovern[s'] title, now held by Appellants, but the decision acknowledged that both Appellants and East End's own expert, Devon Henne, declared that East End's title was clouded." *Id.* at 12-13.

Upon remand, the instant matter then proceeded to a non-jury trial,[6] which was held on September 13, 2021. "At the outset, [Appellants] stated they would rest upon the record in the previous action, . . . and not present any additional evidence." Trial Ct. Op., 1/31/22, at 4.

East End again presented the testimony of Henne, "who was received as an expert in title abstract and land surveying work." Trial Ct. Op., 1/31/22, at 4.

> [Henne] testified he reviewed the chain of title for the disputed land, including an examination of various warrants, patents and deeds from as early as 1793, abstracts of title from the State Game Commission and surveys from as early as 1839, including a 2007 survey done by the Dolbins' expert, Walter Manhart. He acknowledged the property was always contested. He also conducted a "complete boundary survey" of the property in 2014, which was after Senior Judge Uhler's 2013 decision in the prior action. He rejected [Appellants'] contention that a deed conveying 100 acres cannot convey 150 acres. He explained property can be described by reference to monuments, adjoinders and courses and distances, and where, as here, a description may be inconsistent, priority is given first to monuments, such as

_____

[6] The matter was transferred to a visiting senior judge, the Honorable Arthur R. Tilson.

natural objects, landmarks or artificial monuments on the land, then to adjoinders, such as adjoining property, and only then to inconsistent courses and distances or, least reliable, a simple recitation of acreage. Further, he criticized Manhart's research because it relied completely on tax maps prepared ten years after the tax sale, which he said was not proper surveying protocol. He said Manhart should have taken the chain of title back to a legal description that could be plotted or conducted a title search in order to connect that chain of title to an underlying title. Henne concluded that to a reasonable degree of professional certainty the disputed 50-acre parcel belonged to East End.

_____

2 To the extent the legal description [did] not close, as [Appellants] contend[ed], Henne attributed it to a "typographical error" in that a course in distance was omitted. He said it was, nonetheless, a "perfectly acceptable surveying practice when a survey is clearly referenced in a deed to refer to the survey itself in order to correct the mistake that was made in the deed."

*Id.* at 4-5 (record citations omitted).

On November 18, 2021, the trial court entered an order and opinion, ultimately concluding that East End was entitled to an order quieting title to the 150 acres, which included the Property. The court first noted that it adopted East End's September 22, 2021, findings of act and conclusions of law. *See* Opinion and Order of Court, 11/18/21, at 1. It also adopted five additional conclusions, which are as follows:

1. Even if not barred by res judicata and/or collateral estoppel, [Appellants'] claim to title is based entirely on the claim of the title from the tax sale deed of September 14, 1950 which, as noted by [the 2014 *McGovern* decision], contains no legal description. [The trial c]ourt finds the reasoning of [the 2014 *McGovern* decision] to be persuasive, namely that a deed that contains no legal description of the property being conveyed is of no force and effect.

- 11 -

2. Th[e trial c]ourt held a trial on September 13, 2021 and [Appellants] offered no additional evidence in support of their claim to title. [Appellants] have therefore failed to prove their claim to title and their request to [q]uiet title set forth in their [c]ounterclaim is therefore denied.

3. At the trial . . ., [East End] offered extensive evidence of grants of property over the course of centuries that coincide with the property claimed to be owned by it, with boundaries as described in the survey attached . . . to [East End]'s [c]omplaint.

4. [Appellants] offered no contrary evidence, nor did they question [East End]'s evidence. [The trial c]ourt agrees that [Appellants'] sole argument as to defeat [East End]'s title is that the statement in the 1930 Strause deed "100 acres more or less" is inconsistent with the later survey showing 150 acres.

5. In light of [East End]'s evidence and in light of no showing that the Strauses did not intend to convey 150 acres in the 1930 Strause deed, [East End] is entitled to an [o]rder quieting title to the 150 acres in question.

Opinion and Order of Court, 11/18/21, at 1-2.

On March 9, 2022, judgment was entered in favor of East End and against Appellants in accordance with the trial court's November 11, 2021, verdict.[7] This timely appeal followed.

Appellants raise the following issues on appeal:

1. Whether the trial court abused its discretion in failing to review the record from the previous trial of this matter. . ., which was incorporated into the instant record by agreement of the parties[?]

---

[7] Prior to judgment being entered, the matter was reassigned to Senior Judge Edward D. Reibman by order of December 22, 2021, effective January 3, 2022. *See* Trial Ct. Op., 1/31/22, at 6 n.3.

2. Whether the trial court erred in failing to recognize that [East End] received only 100 acres in its deed from [the Strauses] in 1930[?]

3. Whether the trial court erred in failing to apply the principle of acquiescence[?]

4. Whether the trial court erred in holding that [Appellants] offered no evidence to contradict [East End]'s claim, when the trial record from [the previous matter] contains significant evidence in favor of [Appellants'] claim and contradictory to [East End]'s evidence[?]

5. Whether the trial court erred in accepting the testimony of [East End]'s expert, Devon Henne[?]

6. Whether the trial court erred in shifting the burden of proof to [Appellants] to prove that [East End]'s grantor did not intend to convey more than he did[?]

7. Whether the trial court erred in failing to apply the principle of law that one cannot convey what one does not own[?]

8. Whether the trial court erred in ignoring the fact that the Tax Claim Bureau of Schuylkill County acted pursuant to the Act of Assembly in conveying to [Appellants'] predecessors in title 83 acres of which the disputed area was a part[?]

9. Whether the trial court erred in failing to give weight to the fact that no challenge was ever made to the legitimacy of the Tax Claim Bureau's sale[?]

10. Whether the trial court erred in failing to find that [Appellants are] presumptively the legitimate owner[s] of the said 83 acres of which the disputed acreage is a part[?]

11. Whether the trial court erred by misconstruing [the 2014 **McGovern** decision], in holding that deeds not containing a full metes and bounds description cannot convey title to real estate[?]

12. Whether the trial court erred in failing to recognize that the description in [East End]'s deed is ineffective to convey [150] acres of real estate because the description fails to close its borders[?]

13. Whether the trial court erred in failing to apply the principle of law that an owner of real estate cannot disavow or impugn his/her own deed[?]

Appellants' Brief at 3-4. Based on the nature of Appellants' claims, we will address them as follows: (a) issues one and four will be addressed together; (b) issues two and seven will be addressed together; (c) issue three; (d) issue five; (e) issue six; (f) issues eight, nine, ten, eleven will be addressed together; (g) issue twelve; and (h) issue thirteen.

On appeal from a non-jury trial, this Court's scope and standard of review are as follows:

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

> The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

***Bank of New York Mellon v. Bach***, 159 A.3d 16, 19 (Pa. Super. 2017) (citation omitted).

*(a) Issues One and Four*

- 14 -

In their first issue, Appellants contend that the trial court abused its discretion by failing to review the record from the previous trial, which was incorporated into the present record by the agreement of the parties. *See* Appellants' Brief at 18. They point to the following statement in the trial court's November 18, 2021, opinion and order: "[Appellants] offered no contrary evidence, nor did they question [East End's] evidence." Opinion and Order of Court, 11/18/21, at 2. Appellants claim that the August 2013 trial transcript established that the McGoverns, *via* their predecessors in title, "paid the real estate taxes on the premises[,]" and the transcript included "the report of the title abstractor tracing the title back through a chain separate and distinct from that of" East End. Appellant's Brief at 18. Moreover, they allege that their own expert's testimony revealed that "he prepared a legal description of the 67.9 acre parcel which he stated correctly identified the property in question" and "he concluded that [the McGoverns' predecessors] were the owners of the premises including the 50 acre disputed area." *Id.* at 19. Appellants maintain: "For the trial court to state that there was no evidence contrary to, nor any question presented to [East End]'s evidence can only lead to the conclusion that the trial court failed to examine the incorporated record." *Id.* Lastly, Appellant contend that while it is the province of the fact-finder to decide the weight and credibility of evidence, the trial court's conclusion "makes clear that [it] failed to do so[.]" *Id.* at 20.

In their fourth claim, Appellants argue the trial court erred in finding that they offered no evidence to contradict East End's claim. *See* Appellants' Brief at 33. Appellants reference their first argument and state they provided "abundant" evidence to support their claim:

> testimony regarding the acquisition of title initially by the [Sellers], then to the McGoverns, the payment of taxes on the assessed value of 83 acres of vacant land; documentary in the form of maps, drawings and title report; and expert testimony from a professional surveyor who walked the property and opined that title to what was described in the 1950 [Tax Claim Bureau Deed] as 83 acres (but which, when surveyed on the ground and aerially resulted in 67.9 acres) is in the [Sellers] and their successors and includes the 50 acre disputed area.

*Id.* at 34. They allege "there is no support for finding that [Appellants] presented no contrary evidence to [East End]'s and did not question [East End]'s evidence [; rather] the exact opposite is true if the trial court had reviewed the prior record." *Id.* at 34-35.

In dismissing the allegation that it did not consider the prior record, the trial court stated, "The parties agreed to incorporate the record of the prior action [at No. S-172-2009] into the present action. There is no evidence the court failed to consider it." Trial Ct. Op., 1/31/22, at 6.

We agree with the trial court's determination as the record is replete with evidence the trial court was aware of the prior record and took it into consideration. At the beginning of September 2021 trial, counsel for Appellants informed the court that he would be relying on the record of the No. S-172-2009 action. *See* N.T., 9/13/21, at 5. The 2014 *McGovern*

decision was marked as an exhibit during East End's case-in-chief. ***See id.*** at 65. Moreover, the following exchange occurred between the court and the parties relating to the No. S-172-2009 action:

> THE COURT: And we know [Appellants have] rested. And I'm supposed to review previous testimony; am I correct? Is that one of the reasons you didn't present -- produce any other evidence?
>
> [Appellants' Counsel]: Yes, Your Honor. Our testimony is included in the record of [No. S-172-2009].
>
> THE COURT: Okay.
>
> [Appellants' Counsel]: And the exhibits attached thereto.

***Id.*** at 87. Additionally, in its November 18, 2021, opinion and order, the court specifically references the reasoning of the 2014 ***McGovern*** decision as "persuasive[.]" Opinion and Order of Court, 11/18/21, at 1. As such, Appellants' argument is not supported by the record.

Moreover, to the extent that Appellants claim the court erred by specifically stating that they "offered no contrary evidence, nor did they question [East End's] evidence[,]"[8] we note their argument is misplaced. It is clear the court meant they presented no **new** evidence to challenge East End's supplemental evidence. Unlike Appellants, East End did not rest on the evidence they presented in the No. S-172-2009 action. Their expert, Henne, referred to new evidence at the trial, including testimony concerning a

---

[8] Opinion and Order of Court, 11/18/21, at 2.

"complete boundary survey" of the property that was completed in 2014,[9] an addendum report completed in February 2015,[10] and a survey report completed in August of 2021.[11] Appellants' counsel did not question Henne about this supplemental evidence; rather, counsel mainly focused on the "more or less" language of the Strause Deed. *See* N.T., 9/13/21, at 73-87. Accordingly, the trial court's comment, while slightly ambiguous, was directed at Appellants' failure to challenge East End's supplemental evidence — and did not imply that Appellants failed to question any of the evidence. Accordingly, Appellants' first and fourth arguments fail.

### (b) Issues Two and Seven

In their second argument, Appellants claim the court erred in failing to recognize that East End received only 100 acres in the Strause Deed. *See* Appellants' Brief at 20. They state:

> The only theory on which [East End] can base an expansion of a grant of "100 acres, more or less" into 150 acres is reliance on the phrase "more or less" in the description contained in the [Strause D]eed, that the reference to "100 acres" is an approximation, and that the grant in fact consisted of 150 acres.

*Id.* at 21. Appellants rely on *Marino v. Moffa*, 68 Pa. Super. 621 (Pa. Super. 1918), *Pittsburgh Outdoor Advertising Co. v. Surowski*, 64 A.2d 854 (Pa.

---

[9] *See* N.T., 9/13/21, at 16, 58-59.

[10] *See id.* at 60-62.

[11] *See id.* at 67.

Super. 1949), **Pencil v. Buchart**, 551 A.2d 302 (Pa. Super. 1988), for the notion that the words "more or less" are words of "safety and precaution intended to overcome some slight or unimportant accuracy." Appellants' Brief at 22 (citation omitted). Moreover, they point to **Dawson v. Coulter**, 106 A. 187 (Pa. 1919), for the principle that "more or less has little weight as against specific boundaries and is in its nature an uncertain method of description and often a mere estimate." **Pencil**, 551 A.2d at 307, *quoting* **Dawson**, 106 A. at 188. Appellants contend:

> The holdings in these cases bear directly on the legal sufficiency of [East End]'s claim in the instant case: the manifest intent of the grantor controls. [East End]'s grantor intended a grant of 100 acres subject to minor variation, hence the disclaimer "more or less." A landowner cannot extend a 280 feet call by an additional 35 feet, a 15% differential, by relying on the phrase "more or less" as in **Pittsburgh Outdoor Advertising**; nor can the owner of a tract described as 31 acres, more or less, acquire title to 40.29 acres, a 29% differential, on the basis of a survey as in **Buchart vs. Pencil**. *A fortiori* [East End] cannot, as a matter of law, increase its acreage from 100 to 150, a 50% differential, by relying on the words "more or less" in its description since the intent of [East End]'s grantor to convey 100 acres was clearly manifest in the [Strause D]eed.

Appellants' Brief at 26.

Relatedly, in their seventh issue, Appellants allege the trial court erred in failing to apply the principle of law that one cannot convey what one does not own. **See** Appellants' Brief at 40. They refer to their second argument and contend:

> [I]t is only commonsense that one may not convey, even to oneself, what one does not own. Title to real estate can be acquired in only three ways, by inheritance, by conveyance or by

- 19 -

adverse possession.  There is no claim that East End acquired its interest by inheritance or by adverse possession, so those issue[s] can be set aside.  East End's claim must rise or fall on a theory that it acquired title to 150 acres by conveyance, that is, through the 1930 [Strause Deed] to the trustees of the East End Gun Club which conveyed a tract of "100 acres, more or less."

The issue then presented is whether a survey can convert 100 acres, more or less to 150 acres.  A survey never conveys title.  Nor can deeding property to oneself increase one's holdings beyond what one acquired by conveyance.

*Id.* at 40.  They claim that East End should be left with what it bargained for

— 100 acres.  *Id.* at 41.

We begin with our well-settled standard of review:

When reviewing an equitable decision, like a quiet-title action,[3] our scope and standard of review are deferential.  As this Court has explained:

> We will reverse only where the trial court was palpably erroneous, misapplied the law, or committed a manifest abuse of discretion.  Where there are any apparently reasonable grounds for the trial court's decision, we must affirm it.  Moreover, the function of this Court on an appeal from an adjudication in equity is not to substitute our view for that of the lower tribunal; [we are] to determine whether a judicial mind, on due consideration of all the evidence, as a whole, could reasonably have reached the conclusion of that tribunal . . . when reviewing the results of a non-jury trial, we are bound by the trial court's findings of fact, unless those findings are not based on competent evidence.

*Nebesho v. Brown*, 846 A.2d 721, 725-726 (Pa. Super. 2004) (citations and some punctuation omitted).

_____

[3] Quiet title is a legislatively created action that the Supreme Court of Pennsylvania eventually incorporated into the Rules of Civil Procedure.  *See* Pa.R.C.P. 1061-1067.  Although of statutory origins, a suit to quiet title is actually an equitable proceeding "descended from two suits in chancery — the bill

of peace and the bill to remove cloud." *Enhancing the Marketability of Title: The Suit to Quiet Title*, 68 YALE L.J. 1266 (1959).

*Calisto v. Rodgers*, 271 A.3d 877, 881 (Pa. Super. 2022) (*en banc*).

We repeat the law concerning quiet title (with which the parties are well acquainted): "An action to quiet title is designed to resolve a dispute over the title to real estate of which the plaintiff is in possession. The plaintiff bringing a quiet title action has the burden of proof and must recover on the strength of its own title." *Woodhouse Hunting Club, Inc. v. Hoyt*, 183 A.3d 453, 457 (Pa. Super. 2018) (citations omitted).

As mentioned above, the crux of Appellants' appeal is the effect of the "more or less" language as it relates to the Strause Deed. When interpreting a deed, this Court previously has explained:

> [A] court's primary object must be to ascertain and effectuate what the parties themselves intended. The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. If a doubt arises concerning the interpretation of the instrument, it will be resolved against the party who prepared it. . . . To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed. . . .
>
> In the absence of fraud, accident or mistake, the nature and quantity of the real estate interest conveyed must be ascertained from the deed itself and cannot be shown by parol. When the language of the deed is clear and free from ambiguity, the intent

- 21 -

of the parties must be determined from the language of the deed. With respect to unambiguous deeds, a court must ascertain what is the meaning of the words used, not what may have been intended by the parties as shown by parol.

*Wright v. Misty Mt. Farm, LLC*, 125 A.3d 814, 818-19 (Pa. Super. 2015) (citations omitted).

In rejecting Appellants' arguments, the trial court found the following:

Henne concluded East End's chain of title was not limited to 100 acres when that chain included the Strause [D]eed that conveyed 100 acres "more or less" and a prior will in the chain, the Bartolet will, referred to 100 acres "and so forth." Henne determined the boundaries of East End's property as determined by its chain of title and then measured it. It contained 150 acres. [Appellants] presented no evidence to contradict those references. *See*, *Phillips v. Crist*, 33 Pa. Super. 445, 450 (1907) ("Description of land by quantity does not amount to a covenant that the land shall equal the quantity measured in the deed. The grantee has a right to all the land within the boundaries").

Trial Ct. Op., 1/31/22, at 8.

A review of the record supports the trial court's conclusion. At the September 2021 trial, East End's expert, Henne, testified that East End's title to the 150 acres, including the Property, was derived from the following, *inter alia*: (1) an 1875 will bequeath from Abraham Bartolet to his son, Benjamin Bartolet;[12] (2) an 1888 sheriff's sale and resulting deed that conveyed the property to Winfield Hendricks;[13] (3) an 1889 conveyance from Winfield

---

[12] N.T., 9/13/21, at 33.

[13] *Id.* at 33-34.

Hendricks to Fietta Bartolet (the wife of Benjamin);[14] (4) an 1924 transfer from the Estate of Fietta Bartolet to Mary J. Bartolet;[15] (5) an 1925 transfer from Mary J. Bartolet to Charles Strause;[16] and (6) an 1930 transfer from Charles Strause to the Trustees of East End.[17] Henne confirmed that his research strategy was to "circumvent or go around the property that's in question and see who owned all the other property and that if they could get the descriptions of all of those[,] he could figure out what the parameters of the disputed property are." N.T., 9/13/21, at 46.

Henne read the description of the Strause Deed into the record, which is recited in full, as follows:

> All that certain tract of farmland together with all of the buildings located thereon situate in the Township of Wayne, County of Schuylkill, and State of Pennsylvania and bordering along the road at the foot of the Blue Mountains in said township. Bounded and described as follows: On the north and west by land now or late of Milton Scholl, on the east by land of Augustus N. Brensinger, and on the south by the land or lands now or late of J. M. Kauffman and others containing in acreage, 100 acres more or less.

---

[14] *Id.* at 35.

[15] *Id.*

[16] *Id.* at 35-36.

[17] *Id.* at 36-37.

N.T., 9/13/21, at East End Exhibit 2 (Research Report Prepared for East End Gun Club of Schuylkill Haven, 10/4/10, at 19).[18]  ***See also id.*** at 35-37.

Henne responded in the affirmative that it was his "opinion to a reasonable degree of professional certainty that the land that is referred to as the disputed parcel belong[ed] to East End[.]"  N.T., 9/13/21, at 72.  He noted, "Although [East End]'s title is not without flaws, [it] has an unbroken chain of ownership back to the Bartolet's."  ***Id.*** at 82.

On cross-examination, Henne testified to the proper surveying protocols, indicating that adjoiners or monumentation received the top priority, then dimensions, bearings and distances, and "finally acreage."  N.T., 9/13/21, at 73-74.  He further stated, "Acreage is the last of the priorities that a surveyor needs to consider when establishing the boundaries of a piece of property."  ***Id.*** at 74.  Additionally, when asked about the "more or less" language, Henne explained: "[W]hatever the definition would be based on the monumentation or the adjoiners calls in the description.  That acreage is nothing more than an estimate.  Until the property is defined by a survey, you cannot have an accurate estimation of the acreage that's in that."  ***Id.*** at 85.  He stated that based on that survey, the amount of land "can increase dramatically" or "decrease dramatically."  ***Id.***  Henne also indicated that when

_____

[18] We note that the language of the deed was taken from the 1925 deed from Mary J. Bartolet to Charles Strause but no one disputes that the Strause deed uses essentially the same language.

the Trustees of East End deeded the property to East End, that was the first time the land was surveyed "since it was devised in Abraham Bartolet's will" and "this was simply a matter of surveying what they owned based on the interpretation of that will and the adjoining calls that were made throughout the history of the title. This was the first time anyone could come up with an accurate depiction of how many acres they had." *Id.*

Henne also discussed the Kowalczyk-Strang-Dolbin Deed, which was based on the 1950 Tax Claim Bureau Deed. N.T., 9/13/21, at 38. He testified that he discovered through his chain of title research that the property involved in that transaction "might" be "at an entirely different location." *Id.* at 44-45. Henne stated the "configuration end[ed] up looking considerably different than disputed [parcel,]" otherwise known as the Property. *Id.* at 45. Henne then confirmed Appellants' property was "entirely outside of the disputed parcel" and did not "encroach at all on any lands owned" by East End. *Id.*

Upon review, we conclude that the trial court's decision is supported by competent evidence in the record. *See Calisto*, 271 A.3d at 881. At trial, East End offered evidence of the Strause Deed, as well as its 1963 deed, indicating that its 150 acres included the Property. It also offered the expert testimony of Henne, whom the trial court found credible, who opined that the language of the Strause Deed required him to first examine the wording regarding monumentation, as well as the bearing and distances, and that this

language was sufficiently specific so that it could determine the location of the disputed area. *See Hoover v. Jackson*, 524 A.2d 1367, 1371-72 (Pa. Super. 1987) ("Evidence of the acreage of land, especially where, as in this case, the number of acres is followed by the words 'more or less' has little weight as against specific boundaries and is in its nature an uncertain method of description and often a mere estimate. Where, however, . . . a doubt exists as to the actual location of the boundary and the writing contains no words to definitely fix the line by either metes and bounds or monuments on the ground, evidence of acreage becomes a material factor in the determination of the intention of the parties . . . .") (citation omitted). As such, evidence of the acreage was not a material factor.[19]

Furthermore, as pointed out by the trial court, Appellants failed to present any evidence rebutting these presentations, and only focused on the "more or less" language. Therefore, we concluded the trial court did not err when it relied upon the deed description in preference to the amount of acreage, including the language "more or less," recited in the Strause Deed. Accordingly, Appellants' second and seventh arguments fail.

*(c) Issue Three*

---

[19] Accordingly, Appellants' reliance on *Marino* and those other cases is misplaced because acreage did not become a material factor.

In their third argument, Appellants complain that the trial court erred in failing to apply the principle of acquiescence. *See* Appellants' Brief at 28. They assert that from the time East End acquired the 100 acres *via* the Strause Deed and then the 1963 Deed, "it took no action to correct any supposed defect in its description. It allowed [the Property] to remain part of or be absorbed into another party's holdings[,]" which were ultimately sold to the Palmers *via* the 1950 Tax Claim Bureau Deed. *Id.* at 30. Moreover, they state that it was not until 2009 when East End initiated "the first formal legal action by which [it] gave notice that it was disavowing its acquiescence in holding 100 acres." *Id.* at 31. Appellants suggest: "Courts should not be in the business of redrawing boundary lines of real estate and adding or subtracting acreage where time and the parties have demonstrated their settled agreement as to those dimensions." *Id.* They state that pursuant to ***Adams Twp. v. Richland Twp.***, 154 A.3d 250 (Pa. 2017), "where a factfinder cannot ascertain the boundary line after hearing and review of extensive evidence, resort to the doctrine of acquiescence may resolve the dispute and bring an end to the uncertainty." Appellants' Brief at 31-32 (citation omitted). They claim the testimony "establishes that clear boundary lines cannot be ascertained" and that we "should apply the doctrine and hold that [East End] owns 100 acres and [Appellants] own[ ] 67.9 acres according to the boundaries the parties and their predecessors have observed and in which they have acquiesced for decades." *Id.* at 32.

> The establishment of a boundary line by acquiescence for the statutory period of [21] years has long been recognized in Pennsylvania.
>
> Two elements are prerequisites: 1) each party must have claimed and occupied the land on his side of the line as his own; and 2) such occupation must have continued for the statutory period of [21] years. As recognized by the Superior Court and the common pleas court, the doctrine functions as a rule of repose to quiet title and discourage vexatious litigation.

*Zeglin v. Gahagen*, 812 A.2d 558, 561 (Pa. 2002) (footnote & citations omitted; paragraph break added).

Notably, a review of the record reveals that Appellants never raised this claim in their answer and new matter, nor did they raise it at the September 2021 trial. *See* Answer of Appellants, 3/26/18 at 5-6 (unpaginated). Moreover, in their brief, Appellants fail to point to whether they reserved this claim with the trial court. *See* Appellants' Brief at 28-33. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *see also* Pa.R.C.P. 1032(a) (a party generally waives all defenses and objections which are not presented either by preliminary objection, answer or reply).

Nevertheless, as East End points out, "the doctrine of acquiescence is employed where a fact finder cannot determine the location of a boundary" line. *See* East End's Brief at 33. The underlying dispute here does not concern the location of a boundary; rather, it involves competing quiet title claims to the Property. It merits mention that when East End's counsel questioned Henne as to why his 2010 report, which was completed for the No. S-172-

2009 action, did not focus on title issues or include a survey, Henne described

the difference between quiet title and boundary disputes, stating:

> There's a fine line between a title dispute and a boundary dispute. A boundary dispute involves a clear situation where two parties are actually arguing over a line.
>
> And in this case, the research indicated that we had two parties arguing over an entire piece of property. And in my mind, the research indicated that this was more of a title dispute than a boundary dispute. We weren't arguing over measurements. We were arguing over ownership.

N.T., 9/13/21, at 20. As such, even if Appellants had properly preserved the

claim, it would not have been applicable because the matter did not implicate

quiet title for boundary lines, which is necessary for a doctrine of acquiescence

defense argument, but quiet title for acreage of land.[20]  Accordingly,

Appellants' third claim is unavailing.

### (d) Issue Five

In their fifth claim, Appellants contend the trial court erred in accepting

Henne's expert testimony. **See** Appellants' Brief at 35. They argue:

> Over objection the [trial c]ourt allowed [East End]'s expert, Henne, to testify as to his "opinion" as to what land was to be conveyed in the [Strause] deed [to the Trustees of East End]. It is submitted that this testimony should not have been admitted and must not be relied upon in determining the intentions of a

---

[20] Moreover, as the trial court found: "The record indicates East End utilized the [Property] for hunting and also paid taxes on the property, thereby indicating it did not acquiesce in limiting its holding to 100 acres, and it rose to defend its claim when challenged by [Appellants]." Trial Ct. Op., 1/31/22, at 8.

grantor in conveying land.  Opinion testimony has long been held to be unreliable. . . .

Expert testimony has value only when facts upon which it relies have been proven.  The intent of [East End]'s grantor has not been proven, and indeed cannot be proven, as it was expressed in a deed created by the grantor more than 91 years ago.  [East End]'s expert opinion is spun out of thin air in order to hypothesize what the parties should have done, or could have done 91 years ago, if they had had the benefit of the expert's advice.

It is submitted that the only objective evidence of [East End]'s grantor's intent is the [Strause D]eed itself.  The expert opined that [East End]'s grantor really meant to convey what the expert would have done.  This is rank speculation and is impossible to contradict except by saying that it is absurd and ridiculous.  Obviously, Henne was not present when the Strause [D]eed was executed in 1930 so he can have no personal knowledge of the grantor, Strause's, intent yet he opines that Strause's intent was to grant 150 acres when his deed provides only 100 acres; nor is his opinion uncontradicted as it is contradicted by the deed itself; nor are there such assumed facts in the record to proffer such an opinion.

*Id.* at 36-37.  They maintain Henne's testimony amounted to "hypothecations" and the court erred by allowing "such speculation and whimsical testimony."  *Id.* at 37-38.

"Questions concerning the admissibility of evidence lie within the sound discretion of the trial court[.]"  *Parr v. Ford Motor Co.*, 109 A.3d 682, 690 (Pa. Super. 2014) (*en banc*) (citation omitted).  "[E]xpert testimony must be based on more than mere personal belief, and must be supported by reference to facts, testimony or empirical data."  *Snizavich v. Rohm & Haas Co.*, 83 A.3d 191, 195 (Pa. Super. 2013) (citations & quotation marks omitted).  The

standard for admissibility of expert testimony is governed by Pennsylvania Rule of Evidence 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>
> (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702(a)-(c).

Notably, Appellants' argument does not attack the three requirements set forth in Rule 702. Moreover, East End emphasizes that Appellants requested the testimony and evidence from the No. S-172-2009 action be incorporated and admitted at the September 2021 trial and in the prior action, Henne was already qualified as an expert witness. *See* East End's Brief at 35. As East End points out: "Appellants cannot complain that . . . Henne lacks the qualifications to testify as an expert, yet in the same breath introduce testimony and evidence admitted in the [No. S-172-2009 action] wherein . . . Henne was qualified as an expert." *Id.*

Additionally, as mentioned above, Appellants submit that the only objective evidence of East End's intent is the Strause Deed. Contrary to their assertion, Henne did rely on objective evidence — the language of the Strause

Deed at the time the land was conveyed to East End's predecessor. Moreover, he also relied on "previous description[s] where they were recited [to] connect them [in order] to understand what the intent was to be conveyed here." N.T., 9/13/21, at 35. As analyzed *infra*, Henne provided specialized knowledge as to how the deed should be interpreted. Thus, Henne's testimony parallels Appellant's stance regarding the Strause Deed. Accordingly, Appellant's fifth argument has no merit.

### (e) Issue Six

In their sixth claim, Appellants argue the trial court erred in shifting the burden of proof to them to demonstrate that East End's grantor did not intend to convey more than he did. **See** Appellants' Brief at 38. Specifically, they aver:

> By placing on [Appellants] the burden of presenting evidence that Strause did not intend to transfer 150 acres of land to [East End], the trial court misapplied the law requiring a plaintiff to bear the burden of proving superior title to a preponderance of evidence, and instead placed on [Appellants] the impossible burden of proving a negative: that the grantor in a deed created more than 90 years before the trial did not intend to convey the disputed area.

*Id.* at 39.

Initially, we point out that Appellants filed a quiet title action regarding the Property in March of 2015, which was consolidated with East End's quiet title action that was filed in November of 2015. Appellants ignore the fact that they technically share the same burden of proof with East End.

- 32 -

Moreover, we recognize that the plaintiff bears the initial burden of proof for a *prima facie* case involving a quiet title action. *See Woodhouse Hunting Club, Inc.*, 183 A.3d at 457. "Until and unless the plaintiff has made a *prima facie* case by showing title sufficient upon which to base a right of recovery, the defendant is not required to offer evidence of his title." *Hallman v. Turns*, 482 A.2d 1284, 1287 (Pa. Super. 1984). In other words, once the plaintiff demonstrates a *prima facie* claim of title, the burden of proof then shifts to the defendant to present evidence to establish his own title.

Here, the trial court found East End presented "extensive evidence of grants of property over the course of centuries that coincide with the property claim to be owned by it[.]" Opinion and Order of Court, 11/18/21, at 1. Consequently, the burden shifted to Appellants to present evidence to establish their own title. *See Hallman*, 482 A.2d at 1287. As the court correctly determined, Appellants did not offer any "additional evidence in support of their claim to title[,]" and therefore, they "failed to prove their claim to title[.]" Opinion and Order of Court, 11/18/21, at 1. The record supports the trial court's conclusion and Appellants' sixth claim warrants no relief.

*(f) Issues Eight, Nine, Ten, and Eleven*

In their eighth argument, Appellants assert the court erred in "failing to acknowledge the 1950 Tax Claim Bureau [D]eed as *prima facie* evidence of title to the premises including the disputed area." Appellant's Brief at 41. They maintain that "[i]t is beyond dispute that the tax sale deed is conclusive

proof of ownership and title." *Id.* at 42 (citation omitted). Additionally, they

state:

> The Tax Claim Bureau . . . acted within its authority and issued a valid deed to [Appellants'] predecessors in 1950 without objection from [East End] or any other adjoining owner. The description was sufficiently specific for the Tax Assessment Office to assess the land and to plot the land on the assessment map. Indeed, none of the deeds in [East End]'s chain of title prior to the straw conveyance to itself contain a metes and bounds description, either.

*Id.* (record citation omitted).

In their nineth argument, Appellants suggest that the court erred in

failing to give weight to the fact that no challenge was ever made to the

legitimacy of the Tax Claim Bureau's sale. *See* Appellants' Brief at 43. To

support their claim, they simply state:

> As argued above, since no challenge to the Tax Claim Bureau [D]eed issued in 1950 to [Appellants'] predecessors in title was ever challenged by [East End] or by any other property owner, that deed must be conclusively presumed to be definitive of the 83 acre tract therein conveyed. The time for objection to the Tax Claim Bureau's deed has long since passed and no objection should now be entertained.

*Id.* at 43.

In Appellants' tenth claim, they allege the trial court erred in failing to

find that they were presumptively the legitimate owners of 83 acres of land,

which included the Property. *See* Appellants' Brief at 43. They claim:

> The trial court's failure to recognize that the Tax Claim Bureau acted with full statutory authority granted to it by the Real Estate Tax Sale Law, and that the time for objection to the issuance of the 1950 has long since expired, led the trial court to conclude erroneously that there was no presumptive ownership of

- 34 -

the disputed area in [Appellants' deed]. This is contrary to law. The Tax Claim Bureau deed is conclusive proof of ownership and title and is *prima facie* evidence of title[.]

*Id.* at 43-44.

In their eleventh argument, they contend the trial court erred by finding that the 1950 Tax Claim Bureau Deed was not conclusive evidence of title, which they claim "is based on a misinterpretation of the [the 2014 McGovern decision], in holding that deeds not containing a full metes and bounds description cannot convey title to real estate." Appellants' Brief at 44 (footnote omitted). They allege that the "deed description . . . was sufficiently specific to allow the county assessment office to assess the property for taxes and to configure its location on the county tax map" and "to allow a professional engineer to plot out the precise boundaries of the parcel." *Id.* (record citation omitted). Further, they state the 1950 Tax Claim Bureau Deed "should therefore have been found to conclusively . . . establish ownership of the premises including the disputed area[.]" *Id.* at 44-45.

In rejecting these claims, the trial court determined:

[Appellants] contend the trial court erred in failing to find the Tax Claim Bureau acted pursuant to law in conveying 83 acres of land that included the [Property] and that no challenge was ever made to the legitimacy of the Tax Claim Bureau's power to convey real estate. Those issues were not before the court; there was no challenge to the authority of the Tax Claim Bureau to convey real estate or its actions in having conducted the upset sale and issued a deed to the Dolbins. The issue was whether the Tax Claim Bureau's description of the property was sufficient to identify it. In the prior action, the court found the tax deed merely contained a description of the acreage of the property, the condition of the land and that it was located in Wayne Township.

- 35 -

It did not contain any other type of legal description that would allow for a survey to accurately define its boundaries. *See*, *e.g.*, [*Bannard*] *v. New York State Natural Gas Corp.*, 293 A.2d 41 (Pa. 1972) (tax sale of land invalid where description of land is not sufficient to identify property taxed and sold).

There was no need for the court to find [Appellants] were presumptively the owners of the 83 acres. Even if it had, the court concluded title to the disputed 50 acres was in East End based upon Henne's boundary survey and examination of East End's unbroken chain of title.

Trial Ct. Op., 1/31/22, at 7-8.

We agree with the trial court's well-reasoned analysis while providing the following additional comments. First, there is no evidence the trial court incorrectly ignored the 1950 Tax Claim Bureau Deed or questioned its validity.

Second, we note that the law of the case doctrine states that a court involved in the later phases of a litigated matter should not reopen questions "decided by another judge of that same court or by a higher court in the earlier phases of the matter." *Morgan v. Petrol Products Equip. Co.*, 92 A.3d 823, 827 (Pa. Super. 2014) (citation omitted).

Here, in support of their assertion that they provided substantial evidence to support their quiet title claim, Appellants essentially ask us to revisit the same evidence that was before this Court in the 2014 *McGovern* decision — the 1950 Tax Claim Bureau Deed and their predecessors' expert's (Manhart) testimony. However, it merits mention that in that prior decision, the panel considered this evidence and rejected these assertions, concluding: (1) the 1950 Tax Claim Bureau Deed did not satisfy the McGoverns'

evidentiary burden because while "tax deeds can be evidence of ownership and title, it does not necessarily follow that all tax deeds qualify as *prima facie* evidence of good title[;]"[21] (2) the 1950 Tax Claim Bureau Deed did not include a sufficient description because it "merely contain[ed] a description of the acreage of the property, a description of the condition of the land, and the township in which the property is located [but did] not contain any other type of legal description that would allow for a survey to accurately define where the boundaries of the property exactly lie[;]"[22] (3) Manhart "conceded" that he "had not specifically identified the 83 acres referenced in the tax claim deed."[23] We decline to reopen the issue of whether the 1950 Tax Claim Bureau Deed provided sufficient proof for Appellants to quiet title to the Property.[24] Accordingly, these four arguments fail, and we need not address them further.

---

[21] **McGovern**, 1954 MDA 2013 (unpub. memo. at 6-7).

[22] **Id.** at 7.

[23] **Id.** at 8.

[24] One could also conclude that these claims are precluded based on collateral estoppel.

> [O]nce a court has decided an issue of fact of law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. This doctrine is known as issue preclusion, or more traditionally, as collateral estoppel.

* * *

*(Footnote Continued Next Page)*

*(g) Issue Twelve*

In their twelfth claim, Appellants assert the trial court erred in failing to recognize that East End's deed description was "ineffective to convey" 150 acres of land because "the description fail[ed] to close its borders." Appellants' Brief at 45. Specifically, they state: "An examination of the deed from [East End] to itself in 1963 revealed that the description did not close and was out 402 feet north and south and 168 feet east and west." **Id.** (record citation omitted). Relying on **Petition of Twp. Of N. Versailles**, 190 A. 350 (Pa. Super. 1937), they conclude that because East End's deed description does not close, "it cannot prevail against the [the Kowalczyk-Strang-Dolbin Deed]" that Appellants recorded in 2014, which they claim "contains a legally

---

In Pennsylvania, issue preclusion is appropriately invoked when four conditions are met: First, the issue determined in the prior action is identical to that presented in the subsequent action; second, the previous judgment is final on the merits; third, the party against whom the defense is invoked was a party or in privity with a party in the first action; and fourth, the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue on its merits in the prior action

**Rue v. K-Mart Corp.**, 691 A.2d 498, 500 (Pa. Super. 1997) (*en banc*) (citation & quotation marks omitted). Here, the sufficiency issue determined in the prior action is identical to the one presented in the present action. Second, the prior judgment was final on the merits. Third, Appellants were in privity to the McGoverns as subsequent landowners. Fourth, the McGoverns had a full and fair opportunity to litigate the issue on its merits in the prior action.

- 38 -

sufficient description created by a professional engineer." **Id.** at 46 (record citation omitted).

    In addressing this claim, the trial court found the following:

    [T]o the extent the legal description does not close, as [Appellants] contend, Henne attributed it to a "typographical error" in that a course in distance was omitted. He said it was, nonetheless, a "perfectly acceptable surveying practice when a survey is clearly referenced in a deed to refer to the survey itself in order to correct the mistake that was made in the deed."

Trial Ct. Op., 1/31/22, at 8 (record citation omitted).

    We agree with the trial court's determination. Moreover, it merits mention that Appellants' reliance on **Petition of Twp. Of N. Versailles** is misplaced. In that case, the township petitioned to ascertain the location of a disputed boundary line with a neighboring borough. In their brief, Appellants cite the following passage from the case:

    Regarding the Miller-Martin description, the lower court calls attention to the fact that it will not close by more than 33 feet. As stated in the first opinion: "Because of its inaccuracies, the Miller-Martin description cannot prevail as against the McKinney survey and description, which accurately close. . ."

**Petition of Twp. Of N. Versailles**, 190 A. at 354; **see also** Appellants' Brief at 45. However, Appellants omitted the remainder of the court's determination:

    [T]he Miller-Martin description cannot prevail as against the McKinney survey and description, which accurately close, rest with exactitude upon fixed objects and are reasonably corroborated by the plans of railroad and steel companies, and by the description in deed from Matlack to Carnegie Steel Co., in 1892.

*Id.* As East End points out, this Court "did not rule that unclosed boundaries are *per se* void[.]" East End's Brief at 45. Appellants have failed to present other case law that would persuade us otherwise.

Moreover, the survey at issue is the 1961 survey completed by Eliot Ziegler for East End Gun Club prior to the 1963 Deed. *See* N.T., 9/13/21, at 47. Appellants fail to explain how the survey affects Henne's research and conclusion that the Property "belong[ed] to East End[.]" N.T., 9/13/21, at 72. Accordingly, their penultimate issue fails.

*(h) Issue Thirteen*

In their final claim, Appellants argue the trial court "erred in failing to apply the precept of law that an owner of real estate cannot disavow or impugn his/her own deed." Appellants' Brief at 46 (emphasis omitted). They allege:

> A deed is the definitive document by which the quality of title and quantity of real estate held by a property owner is determined. To allow a property owner to vary by fiat the quality of title or the quantity of area conveyed in one's deed impugns the sanctity of the document and destroys the certainty required in conveyancing.

*Id.* Moreover, they state East End attempted to "convey to itself greater acreage, therefore greater rights, than it acquired in [the Strause Deed]" and such "an attempt to disavow its own deed" is not permitted. *Id.* at 47.

As discussed above, East End established that it owned the Property pursuant to the Strause Deed and subsequent 1963 Deed. Moreover, while the deeds may have referenced "100 acres more or less," East End presented substantial evidence that that language in the deeds actually equated to 150

acres, when the land was properly surveyed. Contrary to Appellants' suggestion, there is no evidence to support their assertion that East End is attempting to convey to itself greater acreage than it acquired *via* the Strause Deed. Accordingly, their final argument has no merit.

Judgment affirmed.

President Judge Emeritus Bender joins the memorandum.

Judge McLaughlin did not participate in the consideration or decision of this matter.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2023